UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ROBIN PRESTON,

                Plaintiff,

v.

METROPOLITAN GROUP
PROPERTY AND CASUALTY
INSURANCE COMPANY,

                Defendant.

Civ. No. 14-4733 (KM) (JBC)

**MEMORANDUM OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    The plaintiff, Robin Preston, brought this action against her insurer, Metropolitan Group Property and Casualty Insurance Company ("Metropolitan"). She alleges that Metropolitan under-investigated and underpaid her claims for damage to her house caused by Superstorm Sandy. This, says Preston, was a breach of the insurance contract. Now before the court is Metropolitan's motion for summary judgment. (Dkt. No. 16) Because the claim was filed outside of the contractual one-year limitations period, the motion will be granted.

**I.    BACKGROUND**

    Preston owns a home at 1101 Third Avenue, Asbury Park, New Jersey. (Dkt. No. 1, Ex. A ("Compl.") ¶ 3) Preston had a homeowner's insurance policy underwritten by Metropolitan, under the policy number 1427978921 ("Policy"). (Id. ¶¶ 5-8; Certification of John Robertelli, Esq. in Support of Motion for Summary Judgment, dated June 23, 2015, Dkt. No. 16-2 ("Robertelli Cert.") Ex. C) Preston originally obtained the Policy in 2010, and it was renewed yearly through 2015. (Certification of John Robertelli, Esq. in Further Support of Motion for Summary Judgment, dated July 13, 2015, Dkt. No. 18-2 ("Robertelli Reply Cert.") Ex. D; Affidavit of Janice Leisring, dated August 5, 2015, Dkt. No.

1

22-1 ("Leisring Aff.") ¶¶ 3-8) On October 29, 2012, Superstorm Sandy caused wind damage to Preston's home. (Compl. ¶ 11) Preston submitted a claim to Metropolitan on November 3, 2012, under the claim number JDC93472. (*Id.* ¶14; Robertelli Cert. ¶ 13) Metropolitan inspected Preston's property and generated an adjustment report and estimate of damage dated November 19, 2012. (Robertelli Cert. ¶ 14, Ex. H) The Property was re-inspected twice thereafter, the final inspection taking place in January of 2013. (*Id.*, Ex. F) Metropolitan paid Preston for the claim in a series of seven checks sent from December 3, 2012, to February 4, 2013, in the total amount of $14,721.06. (*Id.* ¶ 15, Ex. D) There were no further payments by Metropolitan or additional claims by Preston after the February 4, 2013 check. (*Id.*) Preston, through her counsel, contacted Metropolitan by letter dated August 14, 2013, requesting a copy of the Policy and adjuster reports. (*Id.*, Ex. E) Metropolitan responded on April 24, 2014, with the requested documents, but Preston did not make a claim to Metropolitan or ask for a readjustment. (*Id.*, Ex. F)

Preston filed her complaint on May 8, 2014, in the Superior Court of New Jersey, Law Division, Monmouth County. The original complaint asserted causes of action for breach of contract and bad faith. The bad faith claim was dismissed with prejudice on consent by order entered July 29, 2014. (Robertelli Cert., Ex. B) Metropolitan removed the action to this court on July 29, 2014. (Dkt. No. 1) Metropolitan answered the Complaint on August 18, 2014. (Dkt. No. 6)

On June 16, 2015, Magistrate Judge James B. Clark, III granted Metropolitan leave to file this summary judgment motion and stayed discovery pending its resolution. (Dkt. No. 13) Metropolitan filed its motion (Dkt. No. 16); Preston opposed (Dkt. No. 17); and Metropolitan filed a reply (Dkt. Nos. 18, 19). Metropolitan was granted leave to file a supplemental affidavit and did so on August 6, 2015. (Dkt. Nos. 21, 22) Preston filed a response to that supplemental submission on August 14, 2015. (Dkt. No. 23)

## II. JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

## III. LEGAL STANDARDS

### a. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138

(3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

## IV.   ANALYSIS

This action was filed on May 8, 2014. Metropolitan moves for summary judgment, stating that Preston's claim is barred by the one-year suit limitation period in the insurance policy. The Policy provides:

> **Lawsuits Against Us**. No suit or action may be brought against **us** by **you** unless there has been full compliance with all of the policy terms. Under Section I of this policy, any suit or action seeking coverage must be brought within twelve months of the loss.

(Policy, Robertelli Cert. Ex. C p. 41) (emphasis in original).

Preston does not dispute that the one-year limitations period is reasonable and enforceable.[1] Rather, the parties disagree on when the clock was running.

Preston's contentions rest on tolling rules under New Jersey law. For insurance claims, the limitations period begins to run on the date of casualty or accident. It is tolled, however, "from the time the insured gives notice until liability is formally declined." *Peloso v. Hartford Fire Ins. Co.*, 267 A.2d 498, 521 (N.J. 1970). That is, the time when the claim is being negotiated or processed

---

[1]   New Jersey law provides for a six year limitations period for breach of contract actions, N.J. Stat. Ann. § 2A:14-1, generally including insurance actions, *see Gahnney v. State Farm Ins. Co.*, 56 F. Supp. 2d 491, 495 (D.N.J. 1999). That period, however, may be shortened by contract, provided that the contractual period is not manifestly unreasonable. *See Klimowicz v. Unum Life Ins. Co. of Am.*, 296 F. App'x 248, 250 (3d Cir. 2008); *Rodriguez v. Raymours Furniture Co., Inc.*, 93 A.3d 760, 768 (N.J. App. Div. 2014). One-year insurance limitations provisions have been "routinely upheld." *Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co.*, 678 A.2d 699, 704 (N.J. 1996).

4

by the insurer is not counted against the insured. Where the insurer has not (as in *Peloso*) declined liability, but the parties disagree on the settlement amount, the limitations period is still suspended while the claim is pending— *i.e.,* through the last settlement payment. See *Gahnney,* 56 F. Supp. 2d at 496.

The hurricane that damaged Preston's house occurred on October 29, 2012. Thus, the one-year statute of limitations began to run on that date, at the earliest. It took Preston only five days—from October 29 until November 3, 2012—to file her original claim. (The limitations clock was technically running for those five days. I set that aside, as it makes no difference to the result.)

Under *Peloso,* the limitations period was tolled from the time Preston gave Metropolitan notice of the damage until the time Metropolitan made the final payment to Preston.[2] Thus the tolling ceased, and the limitations period began running again, on February 4, 2013, the date that Metropolitan paid Preston the last settlement check. The action was not filed within one year of that date; some 15 months passed before it was filed on May 8, 2014.

But Preston has another argument. Equitable tolling, she says, should apply because it was not clear to her at the time that the check of February 4, 2013, was the final check. Preston seems to argue that the final check should have announced itself in some way; otherwise, she says, a series of checks is simply an "invitation to submit additional evidence to recover for the loss as well as a promise to make future payments." (Br. p.10)

Equitable estoppel is a flexible doctrine, but some principles are well established:

> Detrimental reliance is an essential element of equitable estoppel. *Miller v. Miller,* 97 *N.J.* 154, 163 (1984). Moreover, the estopped party must have acted "intentionally or under such circumstances that it was both natural and probable that it would induce action."

---

[2]  Under the New Jersey law, a cause of action accrues when a party "discovers, or by exercise of reasonably diligence and intelligence should have discovered, facts which form the basis of the claim." *Gahnney,* 56 F. Supp. 2d at 495 (citing *Keil v. Nat'l Westminster Bank, Inc.,* 710 A.2d 563, 572 (N.J. App. Div. 1998)). The discovery rule, though referred to in the papers, is not really at issue here; Preston was aware of the hurricane damage and filed a claim within days.

> *Ibid.* Relying on *Price,* we have recognized that "a defendant may be denied the benefit of a statute of limitations where, by its inequitable conduct, it has *caused* a plaintiff to withhold filing a complaint until after the statute has run." *Trinity Church v. Lawson–Bell,* 394 N.J.Super. 159, 171 (App.Div.2007) (emphasis added); *see also Villalobos v. Fava,* 342 N.J.Super. 38, 50 (App.Div.) ("Typically the doctrine [of equitable tolling] is applied 'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."), *certif. denied,* 170 *N.J.* 210 (2001).

*Simpson v. Gallagher Bassett Ins. Servs., Inc.,* No. A-5968-11T4, 2013 WL 5311229, at *5 (N.J. Super. Ct. App. Div. Sept. 24, 2013) (denying estoppel where no evidence of reliance on insurer's lulling conduct).

Preston relies primarily on *Bowler v. Fid. & Cas. Co. of New York,* 53 N.J. 313, 328, 250 A.2d 580, 588 (1969). *Bowler* does contain broad "good faith" language to the effect that the insurer's declination of the claim should have included a statement of reasons and specific advice of the limitations period. *Bowler,* however, is an oft-distinguished case. It preceded the tolling rule of *Peloso.* And no case seems to have accepted the interpretation that *Bowler* enacted a sweeping new requirement of an explicit declination letter, not otherwise required by statute or regulation.[3]

Our case, moreover, is a far cry from the unconscionable conduct in *Bowler,* where an insurer ceased the period payment of benefits to a totally disabled insured, knowing the payments were required, without notifying the insured or requesting additional medical information. The New Jersey Supreme Court came close to calling this a pretext; as the Third Circuit later noted, the insurer's conduct "apparently stemm[ed] from a fear that it would be obligated to pay the additional 600 weeks if it were to pay the 200th week." *Todish v.*

---

[3] *See, e.g., ALI, Inc. v. Generali,* 954 F. Supp. 118, 121 (D.N.J. 1997); *Azze v. Hanover Ins. Co.,* 336 N.J. Super. 630, 639, 765 A.2d 1093, 1099 (App. Div. 2001) (Hanover, however, argues for another reading of *Bowler.* It asserts that "the *Bowler* Court based [its] decision upon the breach of the duty of fair dealing. In a situation where there has been no breach of the duty, the reasoning behind the *Bowler* decision is not present.' We agree with Hanover's analysis of *Bowler.*")

*CIGNA Corp.*, 206 F.3d 303, 307 (3d Cir. 2000) (finding no similarly inequitable or deceptive conduct, and upholding district court's application of the statute of limitations on summary judgment).

Here, too, there is no inequitable conduct or reliance alleged, let alone supported by evidence. And ours is not a case of "declination by silence," in which an insured could be misled. This was an ordinary, 90-day claims adjustment process.

Preston requested, and got, two reinvestigations of her claim. Preston's claim was originally investigated in November of 2012, and then re-investigated on two more occasions, the last having been in January 2013. (Robertelli Cert., Ex. F) The second inspection concerned "additional roofing squares and fencing," and the third inspection was with regard to "the entire second story roofing, rear elevation siding and interior damage to two bathrooms." (*Id.*, Ex. F) The description on each check confirms that additional money was paid to Preston following each re-inspection:

| Paid Date | Memo | Amount |
| --- | --- | --- |
| 12/3/2012 | Homeowner PMT Under Covgs. A, B & C – Dwelling, Private Struct & Person Prop for Loss of 10-29-12 | $5,612.53 |
| 12/5/2012 | Homeowner Payment Under Coverage A Dwelling for Loss of 10-29-12 Stove Repair | $768.26 |
| 12/12/2012 | #120050069 | $500 |
| 12/26/2012 | Homeowner Payment Under Coverage A & B – Dwelling and Private Structures for Loss of 10-29-12 | $2,747.53 |
| 1/9/2013 | Homeowner Payment Under Coverage A Dwelling for Loss of 10-29-12 | $1,500 |
| 2/4/2013 | Homeowner Payment Under Coverage B – Private Structures for Loss of 10-29-12 | $772.77 |
| 2/4/2013 | Homeowner Payment Under Coverage A – Dwelling for Loss of 10-29-12 | $2,819.97 |

(Robertelli Cert., Ex. D)

In short, the claim was investigated, and twice reinvestigated—a claims process that occupied some 90 days, then ended. Preston's suggestion that

7

there was some unbroken flow of checks that seemed likely to continue does not fit the time line.

Nothing about the February 4, 2013 check indicated that more checks were on the way. If Preston thought additional money was due, or that a fourth inspection was required, she did not submit such a supplemental claim or request such a re-inspection. Six months after the checks stopped coming, Preston's sent Metropolitan a letter dated August 14, 2013, requesting a copy of the claims file. Nowhere in that letter does Preston request a re-inspection or demand a readjustment of her claim. Nor does she indicate confusion as to whether her claim was closed or whether additional checks would be forthcoming.

Preston was on notice that the one year period was running. She was provided copies of the Policy at least as of January 7, 2013, and thus was aware of its terms.[4] (Leisring Aff. ¶ 5) Nor has Preston submitted an affidavit or any evidence to the effect that she expected additional checks or did not know her claim had been closed.

But give all the benefit of the doubt: assume that, as of February 4, 2013, Preston had some hope or expectation of further checks. Nevertheless, when a year had rolled by, and no further check had been received, she had to have known that she was in danger of blowing the one year deadline. As February 4, 2014 approached, it was unreasonable to refrain from filing in the unsupported belief that the February 4, 2013 check possibly was not "final."

---

[4] Preston originally also argued that Metropolitan should be estopped from asserting a statute of limitations defense because it failed to provide a copy of the Policy to Preston until April 24, 2014. Metropolitan, however, presented evidence that copies of the Policy had been mailed to Preston yearly from 2010 through 2014, and critically, that a copy was mailed to Preston on January 7, 2013, within two months of the loss, following a request by Preston for a copy of the Policy. (Leisring Aff. ¶ 5) Preston seems to have conceded that she was timely provided a copy of the Policy. At any rate she has not factually rebutted Metropolitan's overwhelming factual showing. (Dkt. No. 23)

There is no sufficient evidence to support Preston's equitable tolling theory. Accordingly, I find that the date of the last check is the proper time from which to measure the limitations period.

Preston submitted her claim on November 3, 2012, and the final settlement check was sent on February 4, 2013. Thus, viewing the facts in the light most favorable to Preston, the statute of limitations began to run then, and expired on February 4, 2014. Preston filed her complaint on May 8, 2014, beyond the one year limitations period.

## V.   CONCLUSION

For the reasons set forth above, Metropolitan's motion for summary judgment is **GRANTED,** and the amended complaint is **DISMISSED WITH PREJUDICE** because it is barred by the applicable one-year statute of limitations. An appropriate Order follows.

Dated:  March 15, 2016

_____
HON. KEVIN MCNULTY, U.S.D.J.